# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| MG, IC, KM, PC, and EH,<br><br>　　　　　　　　Plaintiffs,<br><br>v.<br><br>EAST TROY COMMUNITY SCHOOL DISTRICT, PETER SYENS, KRISTA ISERLOTH, CHRISTOPHER HIBNER, and KATHERINE LIESKE HARDER,<br><br>　　　　　　　　Defendants. | Case No. 24-CV-1259-JPS<br><br><br>**ORDER** |

1. **INTRODUCTION & BACKGROUND**

In October 2024, Plaintiffs MG, IC, KM, PC, and EH ("Plaintiffs") sued Defendants East Troy Community School District (the "District"), Peter Syens, Krista Iserloth, Christopher Hibner, and Katherine Lieske Harder (collectively, "Defendants") relating to sexual abuse that Plaintiffs allegedly suffered as students at the hands of John Rash ("Rash"), a former employee of the District. ECF No. 1. The State of Wisconsin charged Rash in three criminal cases in Walworth County, Wisconsin, all of which are now closed. *State of Wisconsin v. John C. Rash*, Case No. 2024CF000418 (Walworth County Cir. Ct. 2024) (charging one count of second-degree sexual assault of a child); *State of Wisconsin v. John C. Rash*, Case No. 2023CF000528 (Walworth County Cir. Ct. 2023) (charging four counts of repeated sexual assault of the same child); and *State of Wisconsin v. John C. Rash*, Case No. 2023CF000120 (Walworth County Cir. Ct. 2023) (charging four counts of repeated sexual assault of the same child). Rash was

sentenced in all three cases in March 2025. *Wisconsin v. Rash*, No. 2024CF000418, May 13, 2025 docket entry; *Wisconsin v. Rash*, No. 2023CF000528, May 13, 2025 docket entry; and *Wisconsin v. Rash*, No. 2023CF000120, Mar. 20, 2025 docket entry.

On April 4, 2025, Plaintiffs' counsel served a Subpoena to Produce Documents, Information, or Objects or to Permit Inspection of Premises in a Civil Action upon the Walworth County District Attorney's Office (the "DA's Office"). ECF No. 28 at 1.[1] The subpoena, which was collaboratively drafted by Plaintiffs and Defendants, *see* ECF No. 30 at 2, seeks:

> 1. All records, reports, documents, communications, recordings, photographs, videos, and any other materials created or obtained from January 1, 2018 to the present concerning, related to, or referencing Jonh [sic] C. Rash, DOB 02/08/1978, including, but not limited to DA Case Nos. 2023WL001507, No. 2024WL002114 and No. 2022WL000198 and/or Walworth County Case Nos. 2023CF000120, 2023CF000528 and 2024CF000418.
>
> 2. All court filings in Walworth County Case Nos. 2023CF000120, 2023CF000528 and 2024CF000418.
>
> 3. Any and all investigation reports, complaints or documents related to allegations of abuse at East Troy Community School District, located at 2040 Beulah Avenue, East Troy, WI 53120, from 2000-2020, including but not limited to:
>
>> a. Complaints filed with the District Attorney's Office;
>> b. Law enforcement investigation reports;
>> c. Internal memos or communications;
>> d. Statement [sic] or evidence collected; and
>> e. Any other related documentation.

---

[1] Plaintiffs represent that they were "previously . . . unable to obtain records pertaining to the related criminal investigation of . . . Rash because, prior to his sentencing on March 20, 2025, the materials were not available for inspection." ECF No. 29 at 3 (footnotes omitted) (citing ECF No. 30 at 2).

ECF No. 28 at 2; *see* ECF No. 31-2 at 5.[2] The DA's Office now moves under Federal Rule of Civil Procedure 45(d) to quash the subpoena. ECF No. 28. Alternatively, the DA's Office moves the Court to extend the production deadline to allow victims in the criminal cases (those who are not parties to this action) to obtain legal representation. *Id.* at 1.

For the reasons discussed herein, the Court will grant in part and deny in part the motion to quash. The Court declines to quash the subpoena in its entirety but will modify it. It will also extend the DA's Office's production deadline and grant Plaintiffs' motion to amend the abbreviated scheduling order in this case, ECF No. 29.

2.   **ARGUMENTS**

The DA's Office argues that the "documents, information, and/or objects sought in the records subpoena are overly broad and unavoidably contain privileged and/or confidential information protected under the law." ECF No. 28 at 3. Further, "[a]t least four victims in the criminal cases at issue have not consented to disclosure of their information" and "should be afforded an opportunity to be heard and/or obtain legal representation in this matter." *Id.* Additionally, "given the overly broad requests made . . . and the nature of the crimes at issue, multiple privileges and/or confidentiality . . . may be implicated," including under the Health Insurance Portability and Accountability Act ("HIPAA"), "potentially" the Family Educational Rights and Privacy Act ("FERPA"), and various other state bodies of law. *Id.* at 4. According to the DA's Office, "[g]ood cause has

---

[2]The subpoena was also accompanied by "Authorizations and Informed Consent for Release of Criminal Investigation Records" for the release of records relating to the named Plaintiffs, signed by Plaintiffs. ECF No. 31-1 at 4; ECF No. 30 at 2–3.

not been shown as to why, in this civil proceeding, any privileged and/or confidential records of multiple adult and child victims of sexual abuse should be disclosed." *Id.* at 5. The DA's Office also expresses concern regarding a potential chilling effect. *Id.* at 5 and 6 ("[R]eleasing [the] records [that Plaintiffs have subpoenaed] will inevitably affect community members' willingness to report and/or cooperate with the DA's Office in future investigations and prosecutions of child sexual assaults."). Lastly, the DA's Office suggests that complying with the subpoena imposes an undue burden. *Id.* at 6 ("The records subpoena here is unreasonable and oppressive . . . .").

In opposition to the motion to quash, Plaintiffs first point out that the DA's Office did not meet and confer and file a certification of the same in support of their motion. ECF No. 31 at 4. Nevertheless, both Plaintiffs and Defendants—all of whom "conferred and agreed on the language of the [s]ubpoena[] prior to service of the same" and who "have an interest in receiving the documents requested"—attempted to confer with the DA's Office to narrow the scope of the motion to quash. *Id.* at 2, 5–6. For example, the parties proposed that they submit a proposed protective order for the Court's approval relating to the documents and records sought by the subpoena, that the DA's Office provide the parties a privilege log relating to the documents, and that the DA's Office "redact any identifying information of any victim other than the named Plaintiffs in this matter in any responsive documents." *Id.* at 5. According to the parties, these proposals were rejected, and the DA's Office made no proposals of its own. *Id*.

With respect to the merits of the motion to quash, Plaintiffs argue that the documents requested are critical to this case, in which they allege,

Page 4 of 14
Case 2:24-cv-01259-JPS   Filed 06/18/25   Page 4 of 14   Document 34

"among other things, that Defendants had notice of Rash's abuse prior to the cessation of said abuse and did not properly address the abuse." *Id.* at 6 ("Therefore, documentation relating to what Plaintiffs, Defendants, other victims of Rash, and potentially Rash himself reported is vital . . . ."). Plaintiffs emphasize the measures that they have already proposed to protect the confidentiality of the sensitive information sought and the privacy of individuals mentioned therein. *Id.* at 7 ("[C]ounsel has proposed and would agree to a Court[-]approved Protective Order. Counsel also proposed and would agree to the DA's Office producing the documents with redactions of any identifying information of any victims who are not Plaintiffs in this matter."). Plaintiffs also argue that the motion to quash is speculative and lacking in specificity. *Id.* at 7–9. "The DA's Office argues that Wisconsin and federal laws may be implicated based on privileges and/or confidentiality [but] fails to explain with any . . . specificity how these laws would be implicated," particularly given the redactions contemplated. *Id.* at 8 (footnote omitted). Lastly, Plaintiffs argue that the DA's Office fails to describe with any detail how the subpoena imposes an undue burden. *Id.* at 9 ("There is no declaration or affidavit regarding any estimate of time or efforts that would be required to gather responsive documents.").

### 3. LEGAL STANDARD

The Federal Rules of Civil Procedure make clear that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). The Rule imposes a requirement on the Court to "limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that . . . the proposed discovery is outside the

scope permitted by Rule 26(b)(1)." Fed. R. Civ. P. 26(b)(2)(C). Additionally, the Rules explain that "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). The Court is required to "enforce this duty" and "must quash or modify a subpoena that[] . . . subjects a person to undue burden." *Id.*; Fed. R. Civ. P. 45(d)(3)(A)(iv).

In so analyzing, the Court must "balance the interests served by demanding compliance with the subpoena against the interests furthered by quashing it." *Oakeson v. Aero-Space Comput. Supplies, Inc.*, No. 22-CV-698-JPS, 2023 U.S. Dist. LEXIS 11596, at *2 (E.D. Wis. Jan. 24, 2023) (citation omitted). Courts consider factors such as "(1) the relevance of the information requested, (2) the need of the party for the documents, (3) the breadth of the document request, (4) the time period covered by the request, (5) the particularity with which the party describes the requested documents, and (6) the burden imposed." *Id.* (citations omitted); *see also Morrow v. Air Ride Techs., Inc.*, No. IP-05-113-Misc., 2006 U.S. Dist. LEXIS 96651, at *5–6 (S.D. Ind. Mar. 6, 2006) (quoting *Goodyear Tire & Rubber Co. v. Kirk's Tire & Auto Servicenter of Haverstraw, Inc.*, 211 F.R.D. 658, 662–63 (D. Kan. 2003)).

Additionally, "'non-party status' is a significant factor to be considered in determining whether the burden imposed by a subpoena is undue." *United States ex rel. Tyson v. Amerigroup Ill., Inc.*, No. 02 C 6074, 2005 U.S. Dist. LEXIS 24929, at *14 (N.D. Ill. Oct. 21, 2005) (citing *N.C. Right to Life, Inc. v. Leake*, 231 F.R.D. 49, 2005 U.S. Dist. LEXIS 22554 (D.D.C. Oct. 6, 2005); *Wyoming v. Dep't of Agric.,* 208 F.R.D. 449, 452 (D.D.C. 2002); and *In Re Auto. Refinishing Paint*, 229 F.R.D. 482, 495 (E.D. Pa. 2005)). This is the

case because while "parties to a law suit must accept [the] travails [of discovery] as a natural concomitant of modern civil litigation[,] . . . [n]on-parties have a different set of expectations." *Id*. (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)). Accordingly, "concern for the unwanted burden thrust upon non-parties is a factor entitled to *special weight* in evaluating the balance of competing needs." *Id*. (quoting *Cusumano*, 162 F.3d at 717).

### 4. ANALYSIS

The Court begins by addressing several threshold matters. First, the Court agrees on principle that the DA's Office should have conferred with the parties regarding the subpoena dispute prior to filing its motion to quash, simply as a matter of good faith and efficient litigation practice. Nevertheless, the Court will not deny the motion on that basis because its pretrial order requires "the parties" to meet and confer about a disputed matter before presenting it to the Court, and the DA's Office is not a party to this case. ECF No. 21 at 10–11.

Second, the Court agrees with Plaintiffs that the motion to quash lacks specificity and support. That issue is exacerbated by the fact that the motion was not accompanied by any declaration or affidavit in support. *See Castelino v. Rose-Hulman Inst. of Tech.*, No. 2:17-cv-00139-WTL-MJD, 2018 U.S. Dist. LEXIS 237817, at *8 (S.D. Ind. Mar. 27, 2018) ("Claims of undue burden are not exempt from the basic principle that unsupported statements of counsel are not evidence." (citing *United States v. Adriatico-Fernandez*, 498 F. Appx 596, 599 (7th Cir. 2012))). The DA's Office accompanied its reply with such a declaration, but this comes too late. That declaration should have been filed with the motion itself so that Plaintiffs

had an opportunity to consider and respond to it in the first instance.[3] Accordingly, the Court will disregard the declaration accompanying the DA Officer's reply to the extent that it presents new contentions and argument in support of the motion to quash, or expounds upon the motion.

The Court now turns to the merits of the motion to quash. The Court begins with the DA's Office's argument that the subpoena request is overly broad. The DA's Office points out that "[a]t least . . . nine victims" are implicated in the records request. ECF No. 28 at 3. The Court does not agree that the number of victims implicated here renders the subpoena request overly broad. Presumably, at least some of the five Plaintiffs in this matter are counted within those nine victims. *See id.* (mentioning that "[a]t least four victims in the criminal cases at issue have not consented to disclosure of their information," supporting the conclusion that all five named Plaintiffs—who *have* provided such consent—are included in the nine victims that the DA's Office states are implicated by the subpoena).

That said, the Court agrees that the subpoena can be more appropriately tailored in several respects, and it will modify the subpoena accordingly. For example, while the subpoena requests information "concerning, related to, or referencing . . . Rash, . . . including, *but not limited to*" the criminal cases noted above, there is no reason why the subpoena should seek information not related to alleged sexual contact with or sexual abuse of students in the District. ECF No. 31-2 at 5 (emphasis added).

---

[3]The DA's Office writes that it neglected to file the declaration along with its motion to quash "[g]iven the limited time that the undersigned counsel had to prepare a complete response to the Plaintiffs' records subpoena." ECF No. 32 at 2 n.1. The Court is not satisfied with that explanation in light of Plaintiffs' representation that the DA's Office "has made no effort to respond to the [s]ubpoena." ECF No. 31-1 at 4.

Page 8 of 14
Case 2:24-cv-01259-JPS   Filed 06/18/25   Page 8 of 14   Document 34

had an opportunity to consider and respond to it in the first instance.[3] Accordingly, the Court will disregard the declaration accompanying the DA Officer's reply to the extent that it presents new contentions and argument in support of the motion to quash, or expounds upon the motion.

The Court now turns to the merits of the motion to quash. The Court begins with the DA's Office's argument that the subpoena request is overly broad. The DA's Office points out that "[a]t least . . . nine victims" are implicated in the records request. ECF No. 28 at 3. The Court does not agree that the number of victims implicated here renders the subpoena request overly broad. Presumably, at least some of the five Plaintiffs in this matter are counted within those nine victims. *See id.* (mentioning that "[a]t least four victims in the criminal cases at issue have not consented to disclosure of their information," supporting the conclusion that all five named Plaintiffs—who *have* provided such consent—are included in the nine victims that the DA's Office states are implicated by the subpoena).

That said, the Court agrees that the subpoena can be more appropriately tailored in several respects, and it will modify the subpoena accordingly. For example, while the subpoena requests information "concerning, related to, or referencing . . . Rash, . . . including, *but not limited to*" the criminal cases noted above, there is no reason why the subpoena should seek information not related to alleged sexual contact with or sexual abuse of students in the District. ECF No. 31-2 at 5 (emphasis added).

---

[3]The DA's Office writes that it neglected to file the declaration along with its motion to quash "[g]iven the limited time that the undersigned counsel had to prepare a complete response to the Plaintiffs' records subpoena." ECF No. 32 at 2 n.1. The Court is not satisfied with that explanation in light of Plaintiffs' representation that the DA's Office "has made no effort to respond to the [s]ubpoena." ECF No. 31-1 at 4.

Similarly, the subpoena seeks "[a]ny and all investigation reports, complaints or documents related to allegations of abuse" in the District generally. *Id.* Again, the subpoena should be limited to allegations of *sexual* abuse by Rash, specifically. And because the complaint alleges that Rash joined the District in 2002, a more appropriate beginning point for that request is 2002, not 2000. ECF No. 1 at 4. Lastly, the Court will modify the subpoena's request for "[a]ll court filings" to "all publicly accessible court filings." ECF No. 31-2 at 5.[4] The Court will modify the subpoena as specifically outlined below.

The DA's Office also emphasizes the victims' privacy rights. ECF No. 28 at 3–4 (quoting WIS. CONST. art. I, § 9m (noting that victims shall "be treated with dignity, respect, courtesy, sensitivity, and fairness")). However, this concern appears to be largely alleviated by the parties' willingness to propose that the Court enter a protective order and have the DA's Office redact identifying information of any non-party victims. ECF No. 31 at 7. The same is true with respect to the concern that the release of the records sought will negatively affect victims' willingness to report and cooperate with the DA's Office in child sexual assault investigations. ECF No. 28 at 5–6. Since the identifying information of such victims will be redacted from the materials, any such chilling effect should be limited.

---

[4]Should Plaintiffs wish to access sealed or otherwise restricted filings in those cases, they will themselves have to move those courts for such access. *See Sabey v. Butterfield*, No. 23-10957-PBS, 2025 U.S. Dist. LEXIS 66757, at *4 (D. Mass. Apr. 8, 2025) (citing *Resol. Tr. Corp. v. Castellett*, 156 F.R.D. 89, 92 (D.N.J. 1994); *Wilfong v. City of Boise*, No. 1:21-cv-298-BLW, 2022 U.S. Dist. LEXIS 100491 (D. Idaho June 3, 2022); and *P.R. Aqueduct and Sewer Auth. v. Clow Corp.*, 111 F.R.D. 65, 67 (D.P.R. 1986)).

The Court next addresses the contention from the DA's Office that the subpoena seeks privileged and confidential information. The Court agrees with Plaintiffs that this argument is insufficiently supported. For example, the DA's Office contends that HIPAA and FERPA may be implicated, ECF No. 28 at 4, but it makes no attempt to explain how. Further, "a claim of privilege or work product as a basis to quash or modify a subpoena must be adequately demonstrated, requiring the presentation of evidence sufficient to make a prima facie case that the privilege or protection applies to the materials . . . sought by the subpoena." 9 MOORE'S FEDERAL PRACTICE—CIVIL § 45.51 (footnote omitted); *see also Praxair, Inc. v. Hinshaw & Culbertson,* No. 97 C 3079, 1997 U.S. Dist. LEXIS 18291, at *7–8 (N.D. Ill. Nov. 7, 1997) ("A party seeking to invoke a privilege [as a basis for its motion to quash] bears the burden of proving that it applies . . . . Generalized or broad privilege claims will not be upheld." (citing *In re Brand Name Prescription Drugs Antitrust Litig.*, No. 94 C 897, 1995 WL 535077, at *2 (N.D. Ill. 1995))). The DA's Office has made nothing more than a blanket claim of privilege. Its unsupported invocation of privilege is accordingly an insufficient basis upon which to grant the motion to quash.

Relatedly, Plaintiffs' suggestion that the DA's Office provide them with a privilege log was appropriate. *See Castelino,* 2018 U.S. Dist. LEXIS 237817, at *7 ("[The movant's] blanket privilege objection is not sufficient to quash the entire subpoena. . . . While there may exist documents responsive to the subpoena that are privileged, the subpoena also seeks categories of relevant documents that are unlikely to be privileged . . . . [The movant] must assert privilege objections specific to each responsive document and describe the nature of the withheld documents in a privilege log." (citing *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 777 (N.D. Ill.

2005); Fed. R. Civ. P. 45(e)(2); and *Nat'l Lab. Rels. Bd. v. Mod. Drop Forge Co.*, 108 F.3d 1379 (7th Cir. 1997))). In order to facilitate appropriate and efficient production and to avoid disclosure of privileged materials, the Court will order the DA's Office to prepare and provide a privilege log to Plaintiffs' counsel.

Lastly, the Court acknowledges the argument from the DA's Office that much of the information sought by Plaintiffs' subpoena is available via more convenient sources. ECF No. 32 at 2–3. The Court declines to consider this argument, however, since the DA's Office presented it for the first time on reply. *See Trs. of Chi. Painters & Decorators Pension v. Royal Int'l Drywall & Decorating, Inc.*, 493 F.3d 782, 790 (7th Cir. 2007) (citing *NLRB v. IBEW, Loc. Union 16*, 425 F.3d 1035, 1041 (7th Cir. 2005)).

For all the reasons discussed herein, the Court is satisfied that, on balance, the interests involved do not support quashing the subpoena.

## 5. CONCLUSION

The Rules mandate that the party seeking to issue a subpoena "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(d)(1). Plaintiffs have done so. First, they collaborated with Defendants to draft a single subpoena that would encompass all records sought by all parties, obviating the necessity for potentially duplicative subpoenas. They accompanied the subpoena with signed authorizations from all named Plaintiffs, expediting the anticipated production of information relating to them. Lastly, the parties proposed that the Court enter a protective order and agreed to accept materials with the identifying information of non-party victims redacted.

Furthermore, the material sought by the subpoena, as modified by the Court below, appears to be relevant and necessary to Plaintiffs' case.

Meanwhile, the DA's Office's motion to quash is generalized and largely unsupported. For all these reasons, the Court will deny the DA's Office's motion to the extent that it seeks the Court to quash the subpoena. The Court will, however, modify the language of the subpoena and grant the DA's Office the alternative relief it seeks: a modification of the production deadline, which will enable it to comply with the request and afford any non-party victim time "to obtain legal representation" or seek other appropriate relief. ECF No. 28 at 1. The Court will extend the production deadline to **July 31, 2025**.

The Court will also amend the abbreviated scheduling order, ECF No. 26, and grant the parties' unopposed motion for the same, ECF No. 29, in light of the extension of the production deadline. The interim settlement report is now due by **August 29, 2025**. Dispositive motions are now due by **October 17, 2025**.

Accordingly,

**IT IS ORDERED** that the Walworth County District Attorney's Office's motion to quash, ECF No. 28, be and the same is hereby **GRANTED in part and DENIED in part** as stated herein;

**IT IS FURTHER ORDERED** that the subpoena, ECF No. 31-2, be and the same is hereby modified as follows (modifications in red):

> 1. All <span style="color:red">non-privileged</span> records, reports, documents, communications, recordings, photographs, videos, and any other materials created or obtained from January 1, 2018 to the present concerning, related to, or referencing <span style="color:red">allegations of sexual assault, sexual contact, or sexual abuse of students in the East Troy Community School District by</span> Jonh [sic] C. Rash, DOB 02/08/1978, including, but not limited to DA Case Nos. 2023WL001507, No. 2024WL002114 and No. 2022WL000198 and/or Walworth County Case Nos. 2023CF000120, 2023CF000528 and 2024CF000418.

2. All publicly accessible court filings in Walworth County Case Nos. 2023CF000120, 2023CF000528 and 2024CF000418.

3. Any and all non-privileged investigation reports, complaints or documents related to allegations of sexual abuse of students by John C. Rash at East Troy Community School District, located at 2040 Beulah Avenue, East Troy, WI 53120, from 2002-2020, including but not limited to:
    a. Complaints filed with the District Attorney's Office;
    b. Law enforcement investigation reports;
    c. Internal memos or communications;
    d. Statement [sic] or evidence collected; and
    e. Any other related documentation.

**IT IS FURTHER ORDERED** that the Walworth County District Attorney's office shall **PROVIDE** a privilege log to Plaintiffs' counsel on or before **July 15, 2025**;

**IT IS FURTHER ORDERED** that the parties shall **FILE** their motion for a protective order, with proposed protective order attached, on or before **July 2, 2025**;

**IT IS FURTHER ORDERED** that the Walworth County District Attorney's Office's production deadline be and the same is hereby **EXTENDED** to **July 31, 2025**;

**IT IS FURTHER ORDERED** that the parties' unopposed motion to amend the scheduling order, ECF No. 29, be and the same is hereby **GRANTED**; and

**IT IS FURTHER ORDERED** that the abbreviated scheduling order, ECF No. 26, be and the same is hereby **AMENDED** as follows: Interim Settlement Report now due by **August 29, 2025**; Dispositive Motions now due by **October 17, 2025**.

Dated at Milwaukee, Wisconsin, this 18th day of June, 2025.

BY THE COURT:

_____
J. P. Stadtmueller
U.S. District Judge