M.G., I.C., K.M., P.C. and E.H.,
               Plaintiffs,

       v.

EAST TROY COMMUNITY SCHOOL DISTRICT
PETER SYENS,
KRISTA ISERLOTH,
CHRISTOPHER HIBNER and
KATHERINE LIESKE HARDER,
               Defendants.

Case No. 24-cv-01259-JPS

# DEFENDANTS' REPLY MEMORANDUM OF LAW
## IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT

## INTRODUCTION

The facts of this case applied to applicable law do not support a state-created danger claim against the Defendants. The primary case relied upon by Plaintiffs – *Sandra T.E.* – is inapplicable and does not address the fundamental question in evaluating a state-created danger claim: What actions did the defendants take and what dangers would the plaintiffs have otherwise faced? (And, when that fundamental question is answered, it is apparent that liability should not lie against the Defendants.)

Even if the Court were to construe *Sandra T.E.* in a way that applied the holding to a state-created danger claim as Plaintiffs have suggested, the state-created danger claim would still fail as to Defendants Chris Hibner and Kate Harder because there are no facts supporting a claim under the *Sandra T.E.* theory proposed by Plaintiffs.

Further, the questionable extension of *Sandra T.E.* to state-created danger claims, together with conflicting state-created danger precedents, underscores the unsettled nature of the law and reinforces the conclusion that the individual Defendants are entitled to qualified immunity on that claim.

Finally, Chris Hibner's lack of knowledge of Rash's sexual abuse and sexual assaults is dispositive of the supervisory liability claim. No plausible argument can be made that he condoned Rash's sexual assaults and sexual abuse when it is undisputed that he had no knowledge of it.

For these reasons, as more fully set forth below, Defendants' Motion for Partial Summary Judgment should be granted.

## ARGUMENT

I. ***Sandra T.E.* may support a substantive due process claim premised upon supervisory liability or against the District because of a theory of inaction, but it does not support a claim premised upon the state-created danger theory.**

Defendants Chris Hibner, Peter Syens, Kate Harder, Krista Iserloth, and the East Troy Community School District (the "District") did not move for summary judgment on Count I (violation of 42 U.S.C. § 1983 for policy, custom, or practice against the District) which alleged the District's failure to respond to complaints amounted to a permanent and well-settled practice

1

that was the moving force behind Plaintiffs' injuries. [*See* Dkt. 1, pp. 12-13.] Defendants also did not move for summary judgment on Count IV against Syens (violation of 42 U.S.C. § 1983 for supervisory liability) which alleged that Syens knew of Rash's conduct and turned a blind eye to it. [*See* Dkt. 1, pp. 17-18.] This is important because Plaintiffs appear to be conflating their pending substantive due process claims when relying on *Sandra T.E.* to argue in support of their state-created danger claim. However, neither *Sandra T.E.* nor the Third Circuit case that *Sandra T.E.* found liability on a state-created danger claim; the claims at issue in those cases were premised on theories of supervisory liability and municipal practice or policy. Therefore, Plaintiffs reliance on *Sandra T.E.* in support of their state-created danger argument is misplaced.

In *Sandra T.E.*, the District Court denied a principal's motion for summary judgment on the plaintiffs' substantive due process claim because there was evidence that the principal "turned a blind eye" to a teacher's abuse of students and that the principal's behavior "implicitly condoned" the teacher's behavior. *Sandra T.E. v. Sperlik*, 639 F. Supp. 2d 912, 922-23 (N.D. Ill. 2009). (These are necessary components of a supervisory liability claim. *See id.* at 924).) The court then concluded the plaintiffs had presented sufficient evidence to state a claim pursuant to the Third Circuit Court of Appeals' holding in *Stoneking v. Bradford Area School District*. *Id*. at 923.

In *Stoneking*, the Third Circuit Court of Appeals concluded that the plaintiff had sufficiently presented a viable substantive due process claim because she "alleged that defendants, with deliberate indifference to the consequences, established and maintained a policy, practice or custom which directly caused her constitutional harm." *Stoneking v. Bradford Area School Dist.*, 882 F.2d 720, 725 (3rd Cir. 1989). Specifically, the school district in *Stoneking* was alleged to have adopted and maintained a "practice, custom or policy of reckless indifference to instances of known or suspected sexual abuse of students by teachers, in concealing complaints of abuse, and

in discouraging students' complaints about such conduct." *Id*. at 724-25. (Which are necessary elements of a *Monell* claim. *See id*.) The Third Circuit Court of Appeals did not premise its decision on the exception to *Deshaney* – rather, it noted that the plaintiff's theory was premised on supervisory liability and establishment of a policy/practice which is "recognized in a line of Supreme Court cases." *Id*. at 725. The Court went on to say that the plaintiff's theory was "is an independent basis for liability previously pled and preserved by Stoneking *which is unrelated to the issue decided in DeShaney*." *Id*. (emphasis added).

Both *Sandra T.E.* and *Stoneking* stand on solid footing because they are premised on supervisory liability and municipal practice or policy theories – which are well-settled by Supreme Court precedent. *Stoneking*, 882 F.2d at 725 (citation omitted); *T.E. v. Grindle*, 599 F.3d 583, 590-91 (7th Cir. 2010) (citation omitted). Subsequent cases interpreting *Sandra T.E.* and *Stoneking* recognize the cases permit substantive due process claims based upon alleged policies of inaction or concealment. *See, e.g.*, *Sharon F. v. Martin*, No. 21 C 2756, 2022 WL 874666, at *4 (N.D. Ill. Mar. 24, 2022). However, neither *Sandra T.E.* nor *Stoneking* address the question of whether inaction or even concealment in response to known, ongoing danger can give rise to a substantive due process claim under a state-created danger theory (and, in fact, *Stoneking* expressly declined to address the state-created danger exception under *DeShaney*): nothing in either case suggests that alleged concealment either "creates" or "increases" presently existing danger of sexual abuse. Accordingly, these cases are unpersuasive and irrelevant in that regard.

It remains undisputed in the Seventh Circuit that "a school does not have an affirmative constitutional duty to protect its students." *Cielak v. Nicolet Unified Sch. Dist.,* No. 22-CV-819-JPS, 2023 WL 6388933, at *15 (E.D. Wis. Sept. 29, 2023), *aff'd sub nom. Cielak v. Nicolet Union High Sch. Dist.,* 112 F.4th 472 (7th Cir. 2024). Even in the face of known sexual abuse by a state

3

actor, a state-created danger claim cannot stand because the government does not create or increase the ongoing and preexisting danger by failing to intervene. *Windle v. City of Marion, Ind.*, 321 F.3d 658, 662 (7th Cir. 2003). Even evidence with active concealment, like what was alleged in *Sandra T.E.*, courts have concluded that state-created danger claims are not viable. *See, e.g.*, *Doe v. Rosa*, 795 F.3d 429, 431 (4th Cir. 2015) (dismissal of state-created danger claim affirmed even despite allegations of concealment); *Nelson-Molnar v. Ann Arbor Pub. Schs.*, No. 23-CV-11810, 2024 WL 2059709, at \*5 (E.D. Mich. May 8, 2024) (same); *see also O'Donnell v. Scranton Sch. Dist.*, No. 3:20-CV-225, 2024 WL 1197517, at \*15 (M.D. Pa. Mar. 20, 2024) (concluding that concealment is not an affirmative act for purposes of a state-created danger claim).

While Plaintiffs are free to argue at trial that the District had a policy of inaction to support their substantive due process claim against the District or that Syens concealed allegations and failed to respond to support their supervisory liability substantive due process claim against Syens, Plaintiffs are precluded as a matter of law from maintaining a state-created danger claim because Defendants' actions did not create or increase a danger that would not have otherwise befallen the Plaintiffs. *Windle*, 321 F.3d at 661. Applying *Sandra T.E.* to a state-created danger claim would effectively "erase the essential distinction between endangering and failing to protect", which the Seventh Circuit Court of Appeals has directed courts not to do when evaluating state-created danger claims. *Doe v. Village of Arlington Heights*, 782 F.3d 911, 917 (7th Cir. 2015).

II. **Even if the Court were to consider Plaintiffs' argument that alleged concealment can constitute an affirmative action which creates or increases harm, there is no evidence of concealment of sexual assault or sexual abuse by Chris Hibner or Kate Harder, so the state-created danger claims against them still fail.**

If the Court entertains Plaintiffs' argument that concealment of reported sexual abuse can constitute an affirmative action which brought a danger into existence or turned a potential danger

into an actual one for purposes of a state-created danger claim, neither Chris Hibner nor Kate Harder concealed sexual abuse or sexual assaults, so those claims would still fail.

It is important for the Court's evaluation to limit the factual considerations to those included in the parties' Agreed Upon Statement of Facts, rather than the Plaintiffs' brief, because there are a number of misstatements of fact throughout Plaintiffs' brief.[1] [*See* Dkt. 21, p. 9 ("…the Court will only consider the single, agreed-upon statement of facts.").]

Before addressing what each Defendant knew in turn, Defendants must first address the sweeping allegations in Section I of the Plaintiffs' brief regarding what "Defendants" (globally) purportedly knew.

With respect to the incident involving C.P. in 2011 [*see* Dkt. 62, p. 9], there is no evidence that either Kate Harder or Chris Hibner were aware of the incident. [Dkt. 54, p. 14.] Accordingly, that incident is irrelevant as to Harder and Hibner.

As to the 2013 incident involving Rash kicking a student [Dkt. 62, p. 11], there is no evidence that Harder was aware of this incident. [Dkt. 54, p. 15.] Accordingly, that incident is irrelevant as to Harder.

As to E█████'s report in January 2017 [*see* Dkt. 62, pp. 9-10], there is no evidence that Harder or Hibner were aware of the report. [Dkt. 54, pp. 2-3.] Accordingly, that incident is irrelevant as to Harder and Hibner. There is also a passing reference in Plaintiffs' brief to "two prior, documented boundary violations" the "Defendants" were "already aware of" as of E████'s report in January 2017. [*See* Dkt. 62, p. 9.] It is entirely unclear what these incidents are, because the only "boundary violations" that were documented occurred in 2018 and 2019 – after E████'s report in January 2017. [*See* Dkt. 54, pp. 8, 13.]

---

[1] These are not factual disputes because the parties agreed to a set of facts for purposes of this motion. [*See* Dkt. 54.] Any allegations within the brief that are not supported by the agreed upon facts are to be disregarded. [Dkt. 21, p. 9.]

5

As to the April 2017 incident involving inappropriate language [Dkt. 62, p. 6], there is no evidence that Harder was aware of this incident. [Dkt. 54, pp. 15-16.] Accordingly, that incident is irrelevant as to Harder.

Next, the reference to ████'s reported contact during the 2016-2017 [*see* Dkt. 62, p. 9] is irrelevant because ████ did not make a report to anyone until February 2019, when she then spoke with Syens and Iserloth. [Dkt. 54, pp. 10-11.]

Finally, Plaintiffs' brief makes mention that "Syens and Harder's handwritten investigation notes document[ed] that the Plaintiffs reported being touched" on certain areas. [Dkt. 62, p. 10] The Agreed Upon Statement of Facts only makes reference to certain things within *Syens'* handwritten notes; there are no facts pertaining to Harder's notes. [See Dkt. 54, pp. 6-8, 11-12.]

Now, turning to what Harder and Hibner *actually* knew, the facts of the case simply do not support the conclusion that they concealed sexual abuse or sexual assaults.

In 2013, Dr. Hibner knew Rash kicked a student in the shin. [Dkt. 54, p. 15.] In February 2018, Hibner knew there were "boundary issues" involving Rash and students and that Rash "open[ed] his arms while conducting" and having "students hold a note during band lessons" and that four students reported Rash had "touch[ed] them in their upper chest and shoulder area" while conducting. [Dkt. 54, pp. 15-16.] In October 2018, Hibner was aware that Rash used inappropriate physical contact to remove a student from a classroom. [Dkt. 54, p. 15-16.] And in February 2019, Hibner knew there were "boundary issues" involving Rash and students in that "students felt their personal space was invaded when Rash patted them on their back/shoulder, placed his hand on their leg, or rubbed their back during lessons." [Dkt. 54, p. 13.] (Hibner also knew the students did not feel that the touches were inappropriate and did not feel that the touches were sexual in nature. [*Id.*]) In sum, Hibner had actual that Rash (1) kicked a student, (2) made contact with students'

shoulders/upper chests incidentally while conducting, (3) patted students on the back and rested his hand on their legs, or (4) used improper physical contact to remove a student from his classroom.

Even under Plaintiffs' theory of state-created danger liability premised on concealment, these facts do not support a conclusion that Hibner "turned a blind eye" to sexual abuse or "swept" the sexual abuse "under the rug" – the facts demonstrate that, even if other staff or the investigators knew more about sexual abuse allegations, Hibner was not made aware of the extent of the reports. *See Sandra T.E.,* 639 F. Supp. 2d at 923 ("In short, under the Plaintiffs' version of events, it cannot be said that these Defendants turned a blind-eye to Sperlik's behavior, but instead were blinded by Grindle's presentation of that behavior."). Though Plaintiffs assert that Hibner "omitted" the reported contact from his disciplinary letters "despite…investigation notes documenting" reports [*see* Dkt. 62, p. 10], Hibner did not review the handwritten notes before drafting his letter – he only reviewed the investigation reports (which Plaintiffs allege are incomplete). [Dkt. 54, pp. 9, 13.] Because there is no evidence that Hibner had knowledge of sexual assaults or abuse, there is no concealment and the state-created danger claim fails against Hibner even if the Court concluded that concealment could constitute an affirmative act which created or increased a danger for purposes of a state-created danger claim.

As for Harder, nothing in the Agreed Upon Statement of Facts suggests that she knew about allegations of sexual abuse (and she cannot conceal what she was not told). Per the Agreed Upon Statement of Facts, the only information Harder received from any students was during an interview with K███ M█████ wherein K███ reported that "Rash would reach his hands across to instruct students to elongate the note and the back of his hand would touch her chest" "closer to the bottom but not on the breast, right under the clavicle." [Dkt. 54, p. 6.] This is undisputedly *not*

7

sexual assault; it was certainly uncomfortable contact, but the specificity of the location of contact does not permit a factfinder to determine this contact was sexual abuse or assault. Further, there is no evidence that Harder took any steps to conceal that reported contact. To the contrary, the investigation report drafted after K███'s interview made explicit reference to this physical contact ("boundary issue" was substantiated; "Mr. Rash opens his arms while conducting, having the students hold a note during band lessons. Four students stated during the process he touches them on their upper chest and shoulder area with the back of his hand…" [Dkt. 54, p. 8]) Though Harder was not involved in drafting that investigation report, the information she received from K███ was certainly not concealed; it was front and center in the investigation report. [*Id*.]

Per the Agreed Upon Statement of Facts, Harder also was involved in drafting the investigation report in 2019 and the only information contained therein about physical contact with students was substantiated "boundary issues" involving Rash and "students in that students felt their personal space was invaded when Rash patted them on their back/shoulder, placed his hand on their leg, or rubbed their back during lessons." [Dkt. 54, p. 13.] There are no facts suggesting Harder received reports of sexual abuse or contact during the 2019 investigation or that such reports were omitted or concealed from the investigation report. [*See* Dkt. 54, pp. 10-13.] During the 2019 investigation, only one student (Is█████) reportedly told staff (Syens and Iserloth) that Rash touched her "boob." [Dkt. 54, p. 11.] In sum, based on the Agreed Upon Statement of Facts, there is no evidence that Harder was made aware of any reports of sexual abuse or sexual assault and no evidence of concealment. Therefore, the state-created danger claim fails against Harder even if the Court concluded that concealment could constitute an affirmative act which created or increased a danger.

**III. John Rash's discipline unrelated to alleged sexual assaults or sexual harassment is irrelevant for purposes of evaluating the state-created danger claim against Hibner.**

Plaintiffs argued that, because Hibner had knowledge of disciplinary incidents in 2013 and October 2018 involving Rash and permitted Rash to continue working with students, that amounts to deliberate indifference such that Plaintiffs can maintain a state-created danger claim against Hibner.[2] [*See* Dkt. 62, pp. 11-13.] Plaintiffs' argument misses the mark because these two incidents did not give rise to constitutional violations. Absent knowledge of "conduct causing [a] constitutional deprivation," there can be no liability on the part of Hibner. *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *see also Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001) (defendant will be held liable if they directed "the *conduct causing the constitutional violation*, or if it occurred with his knowledge and consent." (internal quotation marks omitted; emphasis added; citation omitted)). Hibner's knowledge of Rash's physical contact with a student in 2013 and again in October 2018 did not somehow inform Hibner of any risk that Rash would, years later, sexually assault the Plaintiffs. *Bostic v. Murray*, 160 F.4th 831, 844 (7th Cir. 2025) (information about "troubling" prior interactions with probationer – allegations of removing clothing to view tattoos in a secluded stairway – did not equate to "actual notice of the risk that" individual "would eventually grope and rape" the plaintiff). Further still, Hibner *responded* to the conduct. While Plaintiffs may disagree with the response or feel that more severe action was warranted, the fact that the response was not patently unreasonable precludes a finding of deliberate indifference. *Johnson v. Ne. Sch. Corp.,* 972 F.3d 905, 915 (7th Cir. 2020).

---

[2] Notably, Plaintiffs have no case law suggesting non-sexual prior disciplinary incidents are relevant to this analysis; nothing in *Sandra T.E.* suggests that prior non-sexual bad acts of a teacher are relevant to a substantive due process analysis. Indeed, all of the prior bad acts of the teacher that were relied upon to support the finding of a potential substantive due process claim were sexual in nature. *See Sandra T.E.,* 639 F. Supp. 2d at 922-23. Similarly, *Stoneking* also only involved prior allegations of sexual assault and harassment that were concealed by staff members. *Stoneking*, 882 F.2d at 729 (3d Cir. 1989).

9

In 2013, Rash was found to have kicked a student in the shin while trying to get the student to move away from the band room after being loud. [Dkt. 54, p. 15.] There is absolutely no argument that can be made that the conduct was sexual, so while Hibner was aware of this incident, he was not aware of any "conduct causing [a] constitutional deprivation," so there can be no liability. *Gentry*, 65 F.3d at 561. Further still, the conduct was formally investigated, a letter was placed in Rash's personnel file, and Rash was directed to undergo additional training as a result. [*Id*.] The response was not patently unreasonable, so there was no deliberate indifference. *Johnson,* 972 F.3d at 915.

In October 2018, Rash was found to have failed to verbally deescalate a situation with a student and then found to have used inappropriate physical contact to remove that student from the band room. [Dkt. 54, p. 16.] Again, there is absolutely no argument that can be made that the conduct was sexual, so while Hibner was aware of this incident, he was not aware of any "conduct causing [a] constitutional deprivation," so there can be no liability. *Gentry*, 65 F.3d at 561. The entire incident was investigated, law enforcement was involved, and an investigation report was generated. [Dkt. 54, pp. 16-17.] As a result of the substantiated allegations, Rash was directed to undergo additional non-violent crisis intervention training, take a course on anger management, and he was suspended for two days without pay. [Dkt. 54 p. 17.] The response was not patently unreasonable, so there was no deliberate indifference. *Johnson,* 972 F.3d at 915.

In sum, neither of these incidents are relevant for purposes of evaluating the state-created danger claim against Hibner and, even if they were considered, they do not give rise to a finding of deliberate indifference.

As a last-ditch effort, Plaintiffs argue that, at minimum, ███████'s claim against Hibner should proceed because Plaintiffs argue that Hibner had actual knowledge as of February 2018

because of his knowledge relative to the 2018 investigation. [Dkt. 62, p. 12.] Contrary to Plaintiffs' accusations, Hibner was *not* "actively involved in the 2017/2018 investigation of Rash, where" Plaintiffs and Lauren Lindow[3] "reported his inappropriate conduct." [Dkt. 62, p. 12.] First of all, this specific report was made in January 2018 – not 2017. [*See* Dkt. 54, p. 4.] (To the extent Plaintiffs are suggesting Hibner was aware of the January 2017 incident, that is unsupported; the parties stipulated for purposes of this motion that Hibner was not aware of the complaint against Rash in January 2017. [Dkt. 54, pp. 3-4.]) Second, and dispositively, the parties stipulated for purposes of this motion that "Hibner *was not involved in the investigation*" in 2018. [Dkt. 54, p. 9 (emphasis added).] It is undisputed that Hibner's knowledge relative to the 2018 "allegations and findings was limited to what was included in the timeline investigation report" [Dkt. 54, pp. 9-10] and that did not provide actual knowledge of a constitutional violation, as discussed *supra*.

Plaintiffs next argue that, at a minimum, Hibner "had actual knowledge and was deliberately indifferent by February 2019, when █████ made her report…" [Dkt. 62, p. 13.] This too is factually unsupported because the parties stipulated for purposes of this motion that Hibner "was not aware of [█████'s] reports about Rash touching her chest." [Dkt. 54, p. 13.] Hibner cannot be deliberately indifferent in response to █████'s complaints *when he did not know about her complaints*. *See Bostic*, 160 F.4th at 844 ("a government official is deliberately indifferent only if he or she 'had actual knowledge of impending harm which he consciously refused to prevent.'").

In sum, there is absolutely no evidence that Hibner had any knowledge of Rash's alleged sexual assaults or sexual abuse of students. His lack of knowledge precludes a finding of liability and the claim against Hibner must be dismissed.

---

[3] Plaintiffs' brief asserts that Lindow reported "in January 2018 that Rash had inappropriately touched their chests, breasts, buttocks, and thighs." [Dkt. 62, p. 6.] This is factually inaccurate and, most importantly for this motion, not contained within the parties' Agreed Upon Statement of Facts. [*See* Dkt. 54.] There is nothing in the Agreed Upon Statement of Facts regarding Lindow's statements or reports. [Dkt. 54.]

**IV.** **Law pertaining to liability on the state-created danger claim is not clearly established, so the individual Defendants are entitled to qualified immunity on that claim.**

Plaintiffs argue that *T.E. v. Grindle* provides a basis to deny the Defendants qualified immunity because, notwithstanding the difference in the theories asserted (supervisory liability, adopted policy/procedure, and state-created danger), reasonable educators "would have concluded that [they] could be held liable for turning a blind eye to and affirmatively covering up evidence of child sexual abuse by one of [their] teachers." *Grindle*, 599 F.3d at 590. As noted above, *Grindle* did *not* address a state-created danger theory of liability, and other courts have held that concealment of sexual abuse is *not* an affirmative act and *cannot* support a state-created danger claim. *See Doe v. Rosa*, 795 F.3d at 431; *Nelson-Molnar,* 2024 WL 2059709, at *5; *O'Donnell* 2024 WL 1197517, at *15. Accordingly, the law is not "clearly established" such that the Defendants would not be entitled to qualified immunity on the state-created danger claim. *Grindle*, 599 F.3d at 588-90 (evaluation of qualified immunity of equal protection claim and supervisory liability claims done separately).

If the Court were to conclude, however, that the law is "clearly established" by *Grindle*, Hibner and Harder would still be entitled to qualified immunity because, as noted in Section II, *supra*, there is no evidence that Hibner[4] or Harder "turn[ed] a blind eye" or "cover[ed] up evidence" of sexual abuse or sexual assaults.

---

[4] In Section III of Plaintiffs' brief (regarding qualified immunity), Plaintiffs make additional factual allegations regarding Defendants' purported knowledge in support of their argument, but the allegations are not contained within the Agreed Upon Statement of Facts and/or are inaccurate. First, there is reference to what reports were contained "in the handwritten notes of Iserloth, Harder, and Syens…." [Dkt. 62, p. 16.] There is also a reference to Hibner's notes from an investigation. [*Id.*] As noted above, the Agreed Upon Statement of Facts only refers to certain things within *Syens'* handwritten notes; there are no facts pertaining to Harder or Iserloth's notes. [See Dkt. 54, pp. 6-8, 11-12.] And there certainly are no notes from Hibner because he was not involved in any investigation. [Dkt. 54.] Second, "Defendants" were not all aware of P██ s "wiggle worm" report or comments in band class; the "wiggle worm" comment was reported to Iserloth and Syens and there is no evidence that Harder or Hibner knew about it. [Dkt. 54, pp. 5-9.] Third, "Defendants" were not all aware of C.P.'s report of pencil tapping in 2011; only Syens knew about C.P.'s report. [*See* Dkt. 54, p. 14.] Fourth, "Defendants" were not all aware of E██ s report in 2017; only Iserloth and Syens were aware. [Dkt. 54, pp. 2-4.]

**V.     Plaintiffs' supervisory liability claim against Hibner is absolutely without merit.**

Plaintiffs' theory of supervisory liability against Hibner must be dismissed because there is absolutely no evidence that Hibner was aware of Rash's sexual assaults or sexual abuse. *See Gentry*, 65 F.3d at 561; Proposed Jury Instruction 7.23. Plaintiffs argue that they "established" in Section II of their brief that "Hibner was both deliberately indifferent and personally involved in the Plaintiffs' constitutional violation" [*see* Dkt. 62, p. 17] but, as discussed in Sections II, III, and IV, *supra*, Plaintiffs' accusations about Hibner's knowledge are specious and unsupported. What Hibner *actually* had knowledge of pertaining to John Rash (*see* Section II, *supra*) did not give rise to a constitutional violation, so there is absolutely no plausible basis for Plaintiffs to argue that Hibner knew of and condoned Rash's constitutional violations. Accordingly, that claim must be dismissed as a matter of law.

## CONCLUSION

For these reasons, the Court should grant Defendants' motion for partial summary judgment and dismiss Plaintiffs' state created danger Due Process claim against all individual Defendants and Plaintiffs' supervisory liability claim against Dr. Hibner with prejudice.

Dated this 27th day of February, 2026.

AXLEY LLP

*Electronically signed by Danielle Baudhuin Tierney*
Lori M. Lubinsky, State Bar #1027575
Danielle Baudhuin Tierney, State Bar #1096371
Attorneys for Defendants
P.O. Box 1767
Madison, WI  53701-1767
Telephone: (608) 257-5661
llubinsky@axley.com; dtierney@axley.com